UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

KRISTY GUYER, as Trustee for the heirs and next of kin of RICK GUYER,

Plaintiff,

v.

VALMET, INC., n/k/a METSO PAPER USA, INC.

Defendant..

Civil No. 01-2310 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

John F. Angell, STICH, ANGELL, KREIDLER & DODGE, P.A. The Crossings, Suite 120, 250 Second Avenue South, Minneapolis, MN 55401, for plaintiff.

David L. Kelleher, THELEN REID & PRIEST, 800 Market Square, 701 Pennsylvania Avenue, NW, Washington, D.C. 20004, and Diana Morrissey FAEGRE & BENSON, 2200 Wells Fargo Center, 99 South Seventh Street, Minneapolis, MN 55402, for defendant.

Rick Guyer was killed while working at Blandin Paper Company ("Blandin") in Grand Rapids, Minnesota. Plaintiff, as trustee for Guyer's heirs and next of kin, brought this products liability action against defendant Valmet, n/k/a Metso Paper ("Valmet"), the manufacturer of the "Roll Wrap" machine that plaintiff claims caused the fatal accident. Plaintiff claims that the machine was defective because it was inadequately guarded to prevent the type of accident that occurred. Defendant requests summary judgment,

FILED SEP - 3 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

arguing that plaintiff fails to make a prima facie case that the Roll Wrap was defective. Plaintiff's claims fail, defendant suggests, because the proffered expert testimony does not address the mandatory aspects of a defective design claim under Minnesota law; defendant suggests that with or without the expert testimony, plaintiff has not offered evidence that would enable a jury to find for plaintiff. For the reasons discussed below, defendant's motion is denied.

## BACKGROUND

### I. General Background

Rick Guyer drove a clamp truck for Blandin. Clamp trucks are similar to forklifts; in the place of the "fork" is a "C" shaped clamp used to grab and lift rolls of paper. Rolls are automatically sorted into recycle rolls or consumer rolls (the consumer rolls are labeled and bound while the recycle rolls are simply placed on the ground). The recycle rolls weigh about 600 pounds, and after being auto-sorted, they are moved to the "lowering scoop" (in conveyer-belt fashion) and lowered to the floor to be picked up by clamp truck drivers and delivered to the designated location. The lowering scoop lowers a particular roll of paper, and then raises automatically so it is ready to receive the next roll. The front edge of the lowering scoop has no guard, so rolls of paper can be "booted" by the clamp truck back along the floor and under the scoop as the scoop raises to pick up the next roll. Prior to this accident, there were at least three instances of rolls of paper being "booted" under the scoop. The Roll Wrap machine is equipped with several safety components, including a flashing light that warns that the lowering scoop is about to

descend, and a piercing whistle that sounds before the scoop lowers. There are also numerous warning signs, and side barrier guards to keep people out of the path of the lowering scoop.

On the day of the accident, Rick Guyer was attempting to pick up recycle rolls. Although no one saw the accident, it seems that Rick Guyer had driven his truck into a restricted-access area in front of the lowering scoop and exited his truck in that restricted access area. The truck's engine was off and the brake was engaged. All alarms were active when Rick Guyer was found. Rick Guyer was found trapped between the "C" clamp of his truck and the partially descended scoop. Apparently, the roll that Guyer was attempting to pick up had rolled beneath the scoop, and he exited his truck either to inspect the situation, or to remove the roll from under the lowering scoop. He was killed when he was crushed between the lowering scoop and the "C" portion of his truck.

Plaintiff's claim is premised on the notion that the Roll Wrap machine was defective because it had no mechanism to prevent rolls of paper from becoming trapped beneath the scoop. If the roll of paper had not gone under the scoop, there would have been no reason for him to exit his truck, and the accident would not have occurred. Plaintiff characterizes this as a "simple" design flaw. Plaintiff also faults the design for lacking a mechanism or method by which the machine could sense something below it, and automatically stop moving if an obstruction was sensed.

## II. Plaintiff's Experts

Because defendant's motion is premised in part on an argument that plaintiff's experts are inadequate, the Court briefly addresses the qualifications and opinions of plaintiff's proposed experts. The Court notes, however, that the instant motion is for summary judgment and is not a motion to exclude the expert reports.

### A. John Bass

Bass is a mechanical and electrical engineer specializing in "reliability engineering"—a field involving determinations of why a particular accident happened and how to prevent another similar accident. In sum, Bass opines that the design of the lowering scoop should have had additional safety elements including a barrier guard along the front of the scoop, an emergency stop button, and a sensing device under the front of the scoop which would trigger an automatic stop. Plaintiff does not suggest that Bass has experience specific to the paper mill industry. Instead, plaintiff points out that Bass's experience includes analyzing and certifying industrial machinery to verify compliance with industry safety codes and standards. Bass has also written programming codes for control systems of other automated industrial machinery.

### B. Erik Anderson

Anderson is an electrical engineer with experience investigating accidents involving electrical devices and equipment. Anderson's opinion, like Bass's, is that the lowering scoop should have had additional safety elements. Anderson focuses on the possibility that the scoop be equipped with a "photo-eye" that would sense an obstruction

and stop the lowering scoop when the obstruction is present. Anderson admits that this is an idea he has not totally worked out, and that he has not modeled or tested the idea.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon

allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Elements of products liability claim

Minnesota caselaw sets out three elements for a prima facie case of product liability: (1) the defendant's product must have been in a defective condition, unreasonably dangerous for its intended use; (2) the defect must have existed when the product left defendant's control; and (3) the defect must have been the proximate cause of the injury. *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 623 (Minn. 1984). The dispute here centers around the first element—was the Roll Wrap defective and unreasonably dangerous. There is no suggestion that the product was modified after it left defendant's control, and in this motion, defendant only briefly argues lack of proximate cause.

A product is in a defective condition unreasonably dangerous for its intended use if the manufacturer "fails to exercise that degree of care in [the] plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended, yet reasonably foreseeable use." *Mozes v. Medtronic, Inc.*, 14 F. Supp. 2d 1124, 1127 (D. Minn. 1998) (citations omitted) (quoting *Bilotta*, 346 N.W.2d at 621).

### A. Reasonable Care Balancing Test

Minnesota courts apply the "reasonable care balancing test" in design defect cases. *See Bilotta*, 346 N.W.2d at 622. Essentially, the "test" involves "a balancing of the

likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." *Mozes*, 14 F. Supp. 2d at 1127 (quoting *Bilotta*, 346 N.W.2d at 621).

Although "[w]hat constitutes 'reasonable care' will . . . vary with the surrounding circumstances," Minnesota courts consistently cite the following factors when considering the balancing test: (1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive. *Holm v. Sponco Mfg.*, 324 N.W.2d 207, 212 (Minn. 1982) (citation omitted).

**B. Demonstration of an alternative design**

Evidence of a feasible, alternative safer design is useful in establishing a claim of defective design. *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 96 (Minn. 1987). Such a showing is not always required, but is a "factor" in the determination of whether a product is unreasonably defective. *See Krein v. Raudabough*, 406 N.W.2d 315, 319 (Minn. Ct. App. 1987) ("Although evidence of a safer, alternative design is not necessarily required in all products liability cases, such evidence is relevant to, and

certainly may be an important factor in, the determination of whether the product was unreasonably defective." (citing *Kallio*, 407 N.W.2d 92)).

### C. Application of the Reasonable Care Balancing Test and the Alternative Design Theory

Defendant argues that plaintiff has failed to offer evidence that would allow a fact-finder to make the requisite balancing. More specifically, defendant argues that plaintiff has offered no evidence of either the likelihood of the harm, or its potential gravity. Defendant suggests that plaintiff has failed to offer evidence regarding the burdens of the suggested precautions. Plaintiff responds that the gravity of the harm is self-evident—Rick Guyer died almost instantly. Plaintiff also argues that the fact that rolls of paper have been booted under the lowering scoop in the past is competent evidence that would allow a jury to balance the likelihood of the harm, and that no expert testimony is needed on the burden of adding suggested precautions.

The Court finds two cases especially helpful in addressing the parties' arguments. The first is *Speldrich v. Kawasaki Motor Corp., USA*, 1992 WL 77538 (Minn. Ct. App. April 21, 1992). In *Speldrich*, a teenager was seriously injured after crashing his ATV. The plaintiff did not offer any evidence of a "risk/benefit" assessment and instead "focused on the defective nature of a three-wheel design." *Id.* at *2. The jury found in favor of the plaintiff, and the reviewing court upheld the verdict, noting that plaintiffs in design defect cases are obligated to show only a "'defective condition unreasonably dangerous to the user.'" *Id.* at *2 (quoting *O'Laughlin v. Minnesota Nat'l Gas Co.*, 253 N.W.2d 826, 832 (Minn. 1977)). Plaintiff "focused on the defective nature of a three-

wheel design . . . while the opposing defense experts presented the advantages." *Id.* These competing views, reasoned the court, allowed "the jury to balance the factors." *Id.* Given the *Speldrich* Court's analysis, plaintiff has presented enough evidence regarding the "reasonable care balancing test" to survive summary judgment.

Defendant relies heavily on *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998). In *Trost*, the Eighth Circuit reasoned that the failure to provide any evidence (or suggestion) of an alternate design, combined with the failure to produce any information upon which to evaluate the likelihood of harm, or the expected gravity of the harm, or what precautions could have avoided the harm, mandated summary judgment for the defendant. *Trost*, 162 F.3d at 1009.

Plaintiff Trost was injured when the front of his bike "dropped precipitously" (plaintiff explained that it felt like he hit an uncovered manhole) and he pitched forward over his bike. Plaintiff argued that a fracture in the bike's frame caused his injuries, that the fracture was caused by metal fatigue, and that the frame was not strong enough to withstand foreseeable loads. However, the only portion of plaintiff's expert report that was admissible was the opinion that the microscopic crack "could have initiated the [frame's] failure." *Id.* at 1006. The more extensive opinion was struck as untimely. *Id.* The plaintiff did not provide evidence that other bikes had similarly failed, and did not suggest what type of metal should have been used in the frame. Defendant's expert, in contrast, opined that the accident caused the fracture in the bike frame, not vice versa.

In upholding summary judgment for the bike manufacturer, the *Trost* Court first determined that the exclusion of the more extensive expert report was proper. *Id.* at

1009. The Court then noted that *res ipsa loquitur* alone cannot make out a products liability case, and that plaintiff had not offered evidence of causation beyond a *res ipsa* theory. *Id.* The Court then reasoned that plaintiff Trost's proffered evidence was not sufficient to survive summary judgment, noting specifically that:

> Trost has produced no information upon which to evaluate the likelihood of harm, the expected gravity of harm, or what precautions could have avoided the harm. He provided no alternative designs to show Trek could have improved the strength of the tube without sacrificing some other important quality.

*Id.* The *Trost* Court concluded that "Trost did not provide **any** evidence upon which a jury could evaluate whether the alleged defective condition made the bicycle unreasonably dangerous," and that therefore summary judgment was appropriate. *Id.*

In the instant case, defendant's criticism that plaintiff has presented little evidence about the likelihood of the harm is not without force. However, plaintiff has established that on at least three prior occasions, rolls of paper were booted under the scoop. Viewing the evidence in the light most favorable to plaintiff, this is enough to survive summary judgment. Previous incidents of a similar occurrence will allow the jury to weigh the likelihood of the harm.

Defendant also argues that there is no record evidence to allow a jury to weigh the "expected gravity of the harm" factor. Plaintiff relies on the fact that Rick Guyer died to show that the risk of harm was serious. In *Trost*, the Court implicitly rejected the fact that plaintiff suffered serious injuries as evidence of the "expected gravity of the harm." *See Trost*, 162 F.3d at 1009 (noting that plaintiff produced "no information upon which to evaluate . . . the expected gravity of harm"). Unlike *Trost*, the accident here involved

heavy machinery, designed to be used in conjunction with 600 pound rolls of paper. In this industrial accident an on-duty employee was killed, almost instantly. In that way, this case is distinguishable from *Trost*, which involved a less obviously dangerous piece of equipment. *See Gross v. Running*, 403 N.W.2d 243, 246 (Minn. Ct. App. 1987) (plaintiff, driver of pickup truck, suffered serious injuries when attempting to use a nylon strap to tow a friend's pick-up, the court noted, "[t]he gravity of potential harm . . . is reflected by appellant's injuries").

In addition, plaintiff has presented adequate evidence, at this stage, that the burden of adding a barrier to prevent rolls from going under the scoop was minimal. At the time the Roll Wrap was sold to Blandin, the defendant had other lowering scoop designs with guarding, called "front skirted" that would have prevented the roll from getting under the scoop. It is likely that a jury can evaluate the burden of adding a simple "skirting" system without extensive expert testimony on the issue.

Minnesota Courts are careful to note that the reasonable care balancing test is flexible and is case specific. In addition, there is no requirement that a plaintiff offer expert testimony on each of the reasonable care balancing factors. *See Mozes*, 14 F. Supp. 2d at 1128 n.2 (noting that "this Court is not aware of any Minnesota case law requiring the use of expert testimony in products liability cases" and analogizing to negligence cases in which "Minnesota Courts do not require the use of expert testimony . . . where the acts or omissions complained of are within the general knowledge and experience of lay people.")

In *Trost*, plaintiff's theory involved highly technical issues such as metal fatigue and various foreseeable stresses on the bike's frame. Perhaps that theory would require expert evidence based on specific testing of the bike at issue. This case is distinguishable in that the experts here do not have to do specific testing to opine that failure to add a protective guard was a design defect. Principles of hazard identification and hazard elimination or control are established concepts in industrial engineering, and plaintiff's experts are qualified to opine in that area.

**III. Admission of Expert Testimony**

Defendant argues against the admissibility of both expert's opinions, but does not specifically make a motion to exclude those opinions. Nonetheless, the in interest of judicial economy, the Court addresses, but does not finally resolve the issue.

Admissibility of expert testimony is governed by Rules 702 and 703 of the Federal Rules of Evidence. Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted. *See Lauzon v. Senco Prods. Inc.*, 270 F.3d 681, 686 (8[h] Cir. 2001) (citations omitted). First, evidence based on scientific, technical, or specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact (in other words, it must be relevant). Second, the proposed witness must be qualified. Third, the proposed evidence must be reliable or trustworthy in the evidentiary sense, so that if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. *Id.* These requirements reflect the *Daubert* analysis, as codified in Rule 702.

Defendant complains about each of the factors. Defendant suggests that neither expert is qualified to testify in this case, since neither has specific experience in the paper mill industry. Defendant also complains that the opinions lack the indicia of reliability required by *Kumho Tire Co., Ltd, v. Carmichael*, 526 U.S. 137 (1999). Defendant characterizes the opinions as "speculative, untested, and contradictory." Defendant also argues that the opinions do not address the likelihood of the harm, or the burdens of precautionary measures. The failure to do so renders the opinions worthless, according to the defendant, because it is those factors that a jury must weigh in the "reasonable care balancing test." Finally, defendant argues that the expert opinions are speculative and untested and may not serve as competent proof.

Taking defendant's complaints in order, the Court begins with the observation that lack of experience in the paper mill industry does not necessarily disqualify the experts' opinions. As plaintiff points out, plaintiff's theory is not about the overall design of the Roll Wrap machine, but the absence of specific safety features. The experts appear qualified to opine on safety features, and typical safety protocol in industrial settings.

Defendant also argues that neither Bass nor Anderson conducted any analysis of the likelihood and gravity of the harm posed by the design or the burdens of precautionary measures. Both experts admitted in deposition testimony that they did not do any analysis as to the likelihood of the alleged harm, and from their discussion of the subsequent remedial measures, it appears that their analysis of the burdens is superficial at best. The failure to consider and analyze those factors impacts the "reasonable care"

analysis, but does not necessarily render the expert opinions inadmissible—the opinions could be relevant to other components of the jury's analysis.

Defendant's final argument is that the opinions are speculative and untested. Defendant notes that expert opinion must be independently verifiable in order to be admissible. Defendant argues that the opinions are based on vague ideas and the alternate designs the experts mention are not even well-thought out, let alone tested. As defendant points out, courts have excluded expert testimony solely on the failure to test. Again, defendant's argument has merit. However, accepting defendant's argument does not necessarily mandate exclusion of the experts' opinion in their entirety. Therefore, the Court will not exclude the experts at this time. The Court will entertain a timely motion to appropriately restrict each expert's testimony to opinions that meet the criteria of the Rules of Evidence.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket Nos. 15 and 21] is **DENIED**.

DATED: September 2, 2003
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge